IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CHARLES FLEMING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:21-cv-00011-SMD |
| | ) |
| KILOLO KIJAKAZI, | ) |
| *Acting Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

**<u>OPINION & ORDER</u>**

Plaintiff Charles Fleming ("Fleming") filed for a period of disability and disability insurance benefits ("DIB") on October 17, 2018, alleging he became unable to work beginning April 1, 2017. Fleming's application was denied at the initial administrative level, as well as on reconsideration. He then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found that Fleming was not disabled. The ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") after the Appeals Council declined review. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Fleming now appeals that decision under 42 U.S.C. § 405(g). For the reasons that follow, the undersigned REVERSES and REMANDS the Commissioner's decision for further proceedings. [1]

---

[1] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 29); Def.'s Consent (Doc. 28).

## I.      STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite her impairments— based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ

---

[2] *McDaniel* is a SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[3] or (2) the testimony of a vocational expert ("VE").[4] *Id.* at 1239-40.

## II.   STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the correct legal standards were applied. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence or the proper legal standards were not applied in the administrative proceedings. *Carnes v. Sullivan*, 936 F. 2d 1215, 1218 (11th Cir. 1991). Further, reviewing courts are required to give deference to factual findings, with close scrutiny to questions of law.

---

[3] Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[4] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

*Cornelius v. Sullivan*, 936 F. 2d 1143, 1145 (11th Cir. 1991).

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F. 2d at 1145.

## III.   ADMINISTRATIVE PROCEEDINGS

Fleming was forty-three years old on his alleged onset date. Tr. 26. He has a limited education[5] and past work as a brick mason helper. Tr. 25. Fleming alleges disability due to multiple medical issues including amputated toes, a crushed foot, a broken collar bone, inability to raise his left arm above the waist, pain in the neck, dizzy spells, anxiety, and depression. Tr. 263. Additionally, Fleming asserts he is illiterate. Tr. 262.

In the administrative proceedings before the Commissioner, the ALJ made the following findings with respect to the five-step evaluation process for Fleming's disability determination. At step one, the ALJ found Fleming did not engage in substantial gainful activity from his alleged onset date through the date he was last insured. Tr. 17. At step

---

[5] Fleming asserts he has a third-grade education but testified at the hearing before the ALJ that he progressed as far as the eighth grade. Tr. 37. However, he indicated it was "like the cutting edge that. It wasn't no 8th grade level is what I'm trying to say." Tr. 38.

two, the ALJ found that Fleming suffers from the following severe impairments: "degenerative disc disease; amputation of the 4th and 5th toes, right foot; broken collar bone, healed; hernia; specific learning disorder with impairment in reading; and anxiety." Tr. 17. At step three, the ALJ found that Fleming does not have an impairment or combination of impairments that medically equaled the severity of the listed impairments. Tr. 18.

> The ALJ proceeded to determine Fleming's RFC as follows:
>
> [T]he claimant has the residual functional capacity to perform light work … except lift or carry 20 pounds maximum occasionally and 10 pounds frequently; stand and walk about 6 hours of 8; sit about 6 hours of 8; occasionally push and pull with the right lower extremity; never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; frequently reach in all directions bilaterally; must avoid concentrated exposure to extreme cold, heat, and vibration; avoid all exposure to hazards (unprotected heights and dangerous moving machinery); can understand remember and carry out simple, routine, repetitive tasks with detailed but uninvolved instructions with no requirement for reading only verbal instructions; tolerate occasional changes in routine; have occasional superficial interaction with coworkers and supervisors as well as no required interaction with the general public.

Tr. 19. At step four, the ALJ found that, through his date last insured, Fleming was unable to perform any past relevant work. Tr. 25. At step five, the ALJ utilized the testimony of a VE and determined that considering Fleming's "residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines" he could perform work as a "house cleaner" and as a "small parts assembler 1." Tr. 26. Both jobs exist in significant numbers in the national economy. Tr. 26. Accordingly, the

ALJ concluded that Fleming was not under a disability at any time from his alleged onset date through his date last insured. Tr. 27.

## IV.   ANALYSIS

Fleming argues the ALJ erred for two reasons. First, Fleming contends the ALJ's RFC determination was not based on substantial evidence because it omitted limitations regarding his illiteracy. Pl.'s Br. (Doc. 18) pp. 4-10. Second, Fleming argues the ALJ erred by improperly rejecting medical source opinions. *Id.* at 10-13. Because the undersigned finds the second argument warrants remand, the merits of the first will not be addressed. Additionally, Fleming contests the ALJ's authority to decide his claim and seeks a *de novo* review before a new ALJ. *Id.* at 14-16. While the undersigned finds that remand is required, *de novo* review before a new ALJ is not.

### A.   The ALJ Improperly Discredited Medical Source Opinions

Fleming argues that the ALJ improperly rejected the medical source opinions of Dr. Lammons, his longtime treating physician, and Dr. Hewlett, his examining physician. Pl.'s Br. (Doc. 18) pp. 10-13.

The Social Security regulations direct how the ALJ evaluates medical opinions.[6] When evaluating the persuasiveness of a medical opinion, an ALJ may consider the factors of supportability, consistency, relationship with the claimant, specialization, and other facts that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c)(1)-(3).

---

[6] Fleming filed his disability claim on October 17, 2018. Tr. 15. Therefore, 20 C.F.R. § 404.1520c controls the weight given to the medical opinions because the claim was filed after March 27, 2017.

Supportability and consistency are the most important factors for consideration. 20 C.F.R. § 404.1520c(b)(2). While an ALJ does not have to articulate how each factor was applied to the medical source opinion, the ALJ must do more than state broad conclusions about the opinion, at least with respect to the factors of supportability and consistency. *Works v. Saul*, 2021 WL 690126, at *15 (N.D. Ala. Feb. 23, 2021). Otherwise, a reviewing court cannot meaningfully assess whether the ALJ properly considered the opinion. *Id.*

### 1. The ALJ Did Not Properly Discount Dr. Lammons's Medical Opinion

Fleming argues that the ALJ failed to cite to any evidence supporting her conclusion that the medical opinion of Dr. Lammons was unpersuasive. Pl.'s Br. (Doc. 18) p. 11. In a medical source statement, Dr. Lammons opined that Fleming has chronic pain syndrome in his lower and upper right extremities. Tr. 604. Dr. Lammons further found that, in an 8-hour workday, Fleming would be bilaterally limited in his ability to reach in front of his body 50% of the time. Tr. 606. He also concluded that Fleming could sit and stand/walk for less than two hours during a workday. Tr. 605.

The ALJ found Dr. Lammons's opinion unpersuasive because it was "not consistent with or supported by objective imaging, clinical findings, or reported daily living." Tr. 25. But despite this finding of inconsistency, the ALJ failed to point to any part of the record showing the purported inconsistencies. This broad rejection of Dr. Lammons's opinion prevents the undersigned from conducting a meaningful review as to whether the ALJ's treatment of the opinion is supported by substantial evidence. As such, remand is required.

### 2.  The ALJ Improperly Substituted Her Opinion for that of Dr. Hewlett's

Fleming argues that the ALJ substituted her own opinion for Dr. Hewlett's. Pl.'s Br. (Doc. 18) pp. 11-12. In relevant part, Dr. Hewlett opined that Fleming could stand and walk up to four hours. Tr. 487.

The ALJ found Dr. Hewlett's opinion unpersuasive regarding Fleming's standing and walking limitation because the opinion "fail[ed] to take into account [Fleming] had fairly recently had his toes amputated." Tr. 25. The ALJ surmised that "significant limitations from the amputation are not expected to remain severe for 12 months." Tr. 25.

Importantly, an ALJ may not make medical findings concerning a claimant's prospects for improvement. *Wild v. Astrue*, 581 F. Supp. 2d 1155, 1160 (N.D. Ala. 2008) (stating that "[a]n ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition or prospect for improvement."). In other words, an ALJ may not substitute her "hunch or intuition for the diagnosis of a medical professional." *Williams v. Barnhart*, 140 F. App'x 932, 934 (11th Cir. 2005) (citing *Marbury v. Sullivan*, 957 F.2d 837, 841 (11th Cir. 1992) (Johnson, J., concurring)).

Here, Dr. Hewlett's opinion does not suggest that Fleming's standing and walking limitation would improve with time, and the ALJ does not point to any authoritative source for her conclusion that the limitation would not remain severe for at least twelve months. Instead, the ALJ finds, in conclusory fashion, that this limitation would improve over a twelve-month span because Fleming recently had his toes amputated. Without any evidence to support this assessment, the undersigned finds that the ALJ improperly

substituted her opinion that Fleming would improve for the opinion of Dr. Hewlett. As such, remand is required.

### B. Fleming Is Not Entitled to a *De Novo* Hearing Before a New ALJ

Fleming argues that, on remand, a new ALJ should conduct a *de novo* hearing on his claim. Pl.'s Br. (Doc. 18) pp. 14-16. He contends that this is necessary because on the date his claim was decided, "there was no validly appointed Commissioner of Social Security." *Id.* at 14. As a result, Fleming asserts that the ALJ who adjudicated his case did not have constitutional authority to do so, which deprived him of a valid adjudicatory process. *Id.* at 15. Further, Fleming contends that because there was no validly appointed Commissioner, "a presumptively inaccurate legal standard was utilized to adjudicate" his claim at the administrative level. *Id.*

Specifically, Fleming argues that Commissioner Andrew Saul, who was Commissioner during the administrative proceedings for his claim, was not validly appointed because he was subject to an unconstitutional removal provision. *Id.* at 14. The removal provision provides that the Commissioner, who is appointed by the President and confirmed by the Senate, is removable by the President only for negligence or malfeasance in office. 42 U.S.C. § 902(a)(3). Fleming asserts that under recent Supreme Court precedent—i.e., *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020) and *Collins v. Yellen*, 141 S. Ct. 1761 (2021)—the removal provision is unconstitutional, thereby tainting the authority of Commissioner Saul and the ALJs to whom Commissioner Saul delegated authority. Pl.'s Br. (Doc. 18) pp. 14-16.

The Commissioner agrees that the removal provision is unconstitutional insofar as the statute limits the President's authority to remove the Commissioner. Comm'r Resp. (Doc. 23) p. 13 ("The parties agree that [the removal provision] violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause."). Because the Commissioner concedes this issue, the only remaining issue is whether the purportedly unconstitutional provision entitles Fleming to a *de novo* hearing before a new ALJ.[7]

In *Collins*, the Supreme Court held that the Director of the Federal Housing Finance Agency ("FHFA") was subject to an unconstitutional removal provision similar to the one at issue here. 141 S. Ct. 1761, 1784 (2021). The Court reasoned that because the FHFA removal provision restricted the President's authority to remove the FHFA's director only for-cause, it violated separation of powers principles. *Id.* at 1783. However, the Court clarified that despite the unconstitutional for-cause limitation in the removal provision, the director's appointment was proper under the Constitution, and his actions were not void *ab initio*. *Id.* at 1787.

Under *Collins*, then, the Social Security Administration's removal provision does not automatically void the actions of Commissioner Saul nor does it deprive the ALJ who determined Fleming's claim of her authority to adjudicate his case. *See id.* at 1788 n. 23 ("[T]he unlawfulness of [a] removal provision does not strip [an officer] of the power to

---

[7] The undersigned assumes without finding that 42 U.S.C § 902(a)(3) is unconstitutional for purposes of this decision.

10

undertake the other responsibilities of his office[.]'"). The removal provision is severable from the rest of the Social Security Act and does not divest the Commissioner of all authority or render all of the Commissioner's decisions presumptively void. *See id.* at 1787 ("Although the statute unconstitutionally limited the President's authority to remove the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the [agency] . . . as void."); *see also Herring v. Comm'r of Soc. Sec.*, 2022 WL 2128801, at *5 (M.D. Fla. June 14, 2022) (finding that the removal provision "can be severed from the remainder of the Act because the Social Security Administration can continue to fully function without the presence of the allegedly unconstitutional provision). As such, even if the provision unconstitutionally insulated Commissioner Saul from removal, he was still properly appointed, and "there [is] no basis for concluding that any head of the [SSA] lacked the authority to carry out the function of the office," which would include delegating authority to ALJs to decide claims. *See Collins*, 141 S.Ct at 1788.

Further, to be entitled to retrospective relief in the form of a *de novo* hearing before a new ALJ, Fleming must show that the removal provision resulted in "compensable harm." *See Collins*, 141 S. Ct. at 1788-89. This requires Fleming to demonstrate "that the unconstitutional provision actually caused [him] harm." *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) (declining to hold that the existence of a potentially unconstitutional removal provision alone tainted an ALJ's decision). In *Collins*, the Supreme Court set forth several examples of how an unconstitutional removal provision

11

could cause compensable harm. *Collins*, 141 S. Ct. at 1788-89. Relevant here is the suggestion that an unconstitutional removal provision would "clearly cause harm" if "the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way." *Id.* at 1789.

Fleming contends that he suffered compensable harm because President Biden would have fired Commissioner Saul earlier but-for the unconstitutional removal provision. Pl.'s Reply Br. (Doc. 27) p. 12. He bases this assumption on a statement made by President Biden after the administration's Office of Legal Counsel opined that *Seila Law* and *Collins* permitted removal of Commissioner Saul at-will instead of only for-cause. *Id.* On the day after receiving the opinion, President Biden terminated Commissioner Saul and stated:

> "Since taking office, Commissioner Saul has undermined and politicized Social Security disability benefits, . . . , reduced due process protections for benefits appeals hearings, and taken other actions that run contrary to the mission of the agency and the President's policy agenda."[8]

Fleming surmises this declaration "fits squarely within the majority's analysis in *Collins* setting forth the grounds for when an aggrieved litigant should be accorded a remedy for a violation of their constitutional rights." Pl.'s Reply Br. (Doc. 27) p. 12.

---

[8] Federal News Network, *Biden Fires Saul as SSA Commissioner*, https://federalnewsnetwork.com/people/2021/07/biden-fires-saul-as-ssa-commissioner (last visited Aug. 19, 2022).

But the undersigned finds that President Biden's remarks do not fall within the category of compensable harm identified in *Collins*. Indeed, President Biden did not state that he would have removed Commissioner Saul but-for the statute, and the undersigned declines to draw such an inference based on the timing of the Office of Legal Counsel's opinion and Commissioner Saul's termination. Further, it is important to note that in her concurrence in *Collins*, Justice Kagan highlighted that *Collins's* limited holding does not provide relief for plaintiffs complaining of an agency decision that would have occurred regardless of the President's removal power, such as individual Social Security decisions. *Collins*, 141 S. Ct. at 1801. Justice Kagan reasoned:

> Consider the hundreds of thousands of decisions the Social Security Administration (SSA) makes each year. The SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's removal provision is next on the chopping block. But given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. That makes sense.

*Id.* The Court agrees.

Fleming has not shown that the result in his case would have been different if Commissioner Saul had been removed. As such, it appears to be one of the countless cases referenced by Justice Kagan where the result would not change had the Commissioner been subject to a different removal provision. *See L.M. v. Comm'r of Soc. Sec.*, 2021 WL 8268034, at *2 (M.D. Ga. Dec. 3, 2021) (finding that the plaintiff had not shown compensable harm where he "did not argue that President Trump wanted to remove Saul from his position before the plaintiff's case was decided or that the result in his case would have been different if Saul had in fact been removed"). In short, because Fleming has not

13

shown that the purportedly unconstitutional removal provision caused him compensable harm, he is not entitled to a *de novo* hearing before a new ALJ.[9]

## V. CONCLUSION

As explained above, the undersigned finds reversible error in the Commissioner's decision. Therefore, the decision is REVERSED and REMANDED for further proceedings. A separate judgment will issue.

DONE this 8th day of September, 2022.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE

---

[9] *See, e.g.*, *Herring*, 2022 WL 2128801, at *5 ("Plaintiff fails to show that absent the alleged unconstitutional provision, Plaintiff's claim would have been decided differently at either the ALJ or the Appeals Council level."); *Platt v. Comm'r of Soc. Sec.*, 2022 WL 621974, at *6 (S.D.N.Y. Mar. 3, 2022) (declining to remand a social security appeal because the plaintiff failed to show how the removal provision "impacted the ALJ's decision to reject her appeal"); *Vickery v. Comm'r of Soc. Sec.*, 2022 WL 252464, at *4 (M.D. Fla. Jan. 26, 2022) ("In this instance, following the examples in Collins, there are no allegations to suggest an effort by the President to remove the Acting Commissioner that were rebuffed by [the unconstitutional removal provision]."); *Perez-Kocher v. Comm'r of Soc. Sec.*, 2021 WL 6334838, at *4 (M.D. Fla. Nov. 23, 2021) (finding that a plaintiff failed to state a claim upon which relief could be granted because the plaintiff could not establish that the Acting Commissioner's unconstitutional tenure protection caused compensable harm); *Helms v. Comm'r of Soc. Sec.*, 2021 WL 5710096, at *3 (W.D.N.C. Dec. 1, 2021) (finding that it was implausible that the Commissioner's protection from removal from office, "whether constitutional or not," could have affected the ALJ's decision); *Tibbets v. Comm'r of Soc. Sec.*, 2021 WL 6297530, at *6 (M.D. Fla. Dec. 21, 2021) ("[E]ven assuming *arguendo* that the removal provision is unconstitutional, it would not necessitate a rehearing of Plaintiff's claim because the provision is severable and there is no evidence to suggest a nexus between the removal provision and a compensable harm to Plaintiff.")